NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| AMBER JENNINGS, | : | |
| Plaintiff, | : | Civil No. 12-2721 (RBK) |
| v. | : | **OPINION** |
| MICHAEL J. ASTRUE | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Amber Jennings ("Plaintiff") for the review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability and Supplemental Security benefits under Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is vacated and remanded to the Administrative Law Judge ("ALJ") for further consideration.

I.  **BACKGROUND**

Plaintiff, a 35 year old woman, submitted an application for disability benefits on April 24, 2007. Her application alleged that she had suffered from various physical and mental health issues which rendered her unable to perform full-time work since at least December 31, 2005. She had previously held jobs as a billing clerk at a freight company, as a customer service clerk,

and as a communications assistant for AT&T, a post she held from October 2000 until December 2005. Administrative Record ("R.") 165.

Because, for the reasons stated below, the Court bases its decision to remand upon the ALJ's failure to take into account certain potentially influential medical evidence from Plaintiff's primary care physician, the specific facts underlying Plaintiff's disability claim are not particularly critical to the Court's analysis. Accordingly, a brief summary of Plaintiff's alleged physical and mental condition will suffice.

**A.     Alleged Physical Limitations**

Plaintiff is approximately 5' 10" tall and weighed about 230 pounds when she first filed for disability benefits in 2007. In June 2005, she was diagnosed with a torn medial meniscus in her right knee by Dr. David Lessing, a board-certified orthopedic surgeon. R. at 296. He recommended arthroscopic surgery, but Plaintiff did not immediately agree to undergo that procedure. *Id.* She finally had a meniscectomy on January 13, 2006. R. at 301. Her next visit to Dr. Lessing indicated that she was largely free of pain following that surgery. *Id.* But as 2006 progressed, Plaintiff started to experience more knee pain and swelling, especially after returning to work in March 2006. *See* R. at 300. In May 2006, Dr. Lessing gave her an injection of cortisone and Lidocaine. R. at 299. Plaintiff continued to see Dr. Lessing through 2007, during which she complained of severe knee pain. R. at 288-91.

Plaintiff was then seen by Dr. Steven Gecha, another orthopedist, in January 2008. He opined that Plaintiff probably suffered from a chronic ACL tear, as well as Patellar subluxation with tendinitis. R. at 390. He advised her to wear a derotational brace as she engaged in an orthopedic rehabilitative program. *Id.* That program was administered by Dr. Michael Palmer, who met with Plaintiff frequently from January to November 2008. R. at 397-401. Dr. Palmer

stated that Plaintiff should not be working as of June, 26, 2008. R. at 400. Plaintiff eventually underwent arthroscopic surgery in August 2008. R. at 405. Despite the surgery's apparent success, Plaintiff continued to experience knee pain. R. at 414.

Plaintiff's primary care physician, Dr. Hans Gandhi, saw patient regularly from December 15, 2005 to November 21, 2008. *See* R. at 358-82. In March 2007, Dr. Gandhi submitted an Examination Report in which he diagnosed Plaintiff with cartilage damage in her knee, capsulitis in her shoulder, and carpal tunnel syndrome in her wrist. R. at 355. Around the same time, he wrote a note advising that Plaintiff should be placed on prolonged disability starting March 3, 2007. R. at 382. He also referred her for a physical therapy regimen to improve strength in her knee. R. at 257.

Dr. Barry Fass was engaged to examine Plaintiff's wrist in September 2008. His opinion was that Plaintiff had developed pain in her wrist due to repetitive typing at work. R. at 536-37.

Finally, in April 2009, in preparation for Plaintiff's hearing before the ALJ, Dr. Gandhi submitted a Medical Source Statement ("MSS") [1] which contained his most recent findings about Plaintiff's mental and physical health. R. at 348-52. His MSS indicated that in his opinion, Plaintiff's pain prevented her from performing normal, full-time work activities on a frequent basis. R. at 349. He also opined that her pain would be significantly increased were Plaintiff to engage in normal physical activity such as walking, standing, bending, stooping, and moving of her extremities. *Id.*

**B.     Alleged Mental Impairments**

Plaintiff was hospitalized for ten days at a mental health facility called the Carrier Clinic in August 2004 after being referred there by Adult Protective Services for exhibiting "bizarre

---

[1] Medical Source Statements are "medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment, in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p, 1996 WL 374183 (July 2, 1996).

3

behavior." R. at 254. Her treatment records reveal that her psychiatrist had diagnosed her with schizoaffective disorder. R. at 252. Upon leaving the clinic, her doctors diagnosed her with Bipolar I mood disorder with psychosis, and personality disorder not otherwise specified. *Id.*

Plaintiff has seen numerous mental health professionals since being released from the Carrier Clinic. From August to December 2007, Plaintiff was seen once every two weeks by psychiatrist Dr. Orna Alpert. R. at 383-88. Her opinion was that Plaintiff was seriously limited in many work activities as a result of her psychiatric conditions. R. at 385-86.

In addition, Dr. Kalyani Deshpande, a psychiatrist, and Dr. Karen Gettman, a therapist, treated Plaintiff from July 2008 until October 2009. R. at 439-532. Their combined diagnosis during an Initial Evaluation in August 2008 was that Plaintiff presented with major depressive disorder and generalized anxiety disorder. R. at 447. One of the last set of treatment notes, dated October 19, 2009, states that Plaintiff was "still suffering from depression and anxiety, but is mildly improved with less stress and improved recovery from surgery." R. at 481.

Finally, Plaintiff was seen by Dr. Pradip Gupta for a consultative exam in February 2009. He submitted a mental status evaluation that revealed a diagnosis of chronic depressive disorder not otherwise specified and panic attacks with agoraphobia. R. at 328-29.

## C. Administrative Review Process

Plaintiff filed for disability benefits on April 24, 2007, alleging an onset of disability beginning December 31, 2005. Her claims were denied on August 1, 2007. R. at 65. She moved for reconsideration, and again her claims were denied on March 17, 2008. R. at 78. Plaintiff next sought a hearing before an ALJ, which took place on January 26, 2010. R. at 32. Plaintiff testified at the hearing, and the ALJ considered her medical evidence. On February 24, 2010, he issued a decision holding that Plaintiff was not disabled and thus did not qualify for

benefits. Her request for review of this decision was denied on March 5, 2012, rendering the ALJ's February 24th decision final. She later filed an action in this Court, seeking judicial review. (Doc. No. 1).

The ALJ's decision made certain findings of fact before ultimately concluding that Plaintiff was not disabled. He acknowledged that Plaintiff had various severe impairments, including conditions in her knee, mild right carpal tunnel syndrome, depressive disorder not otherwise specified, and anxiety. R. at 21. The ALJ then concluded that despite these impairments, Plaintiff retained the capacity to perform "the full range of sedentary work." R. at 23. He arrived at this conclusion by considering a 2007 Medical Certificate from Dr. Gandhi, the consultative examination of Dr. Fass, as well as the treatment notes of Dr. Lessing, Dr. Gecha, and Dr. Palmer, all describing the actions taken with respect to Plaintiff's knee and carpal tunnel conditions. R. at 24-26. His conclusions about Plaintiff's mental condition were based upon a review of health records created by Dr. Alpert, Dr. Rivere,[2] Dr. Gupta, Dr. Deshpande, and Ms. Gettman. R. at 26-30. The ALJ's final decision minimized the effect of Plaintiff's mental health issues on her ability to perform sedentary office-type work. *See* R. at 24, 29-30.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the Court exercises plenary review of the legal issues decided by the ALJ, including, for example, whether the final decision was made upon application of the correct legal standards. *See Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The ALJ's final decision to deny Plaintiff's application for benefits, however, is accorded significant deference. Specifically, the Court, after reviewing the administrative record as a whole, must determine whether the decision was supported by substantial evidence. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is

---
[2] Dr. Rivere, a license psychologist, treated Plaintiff from February 2006 until July 2007. R. at 27.

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). If the Court finds that the ALJ's decision was supported by substantial evidence, it is not permitted to set aside that decision, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft*, 181 F.3d at 360).

The substantial evidence analysis is in its essence a qualitative exercise, rather than a merely quantitative one. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). That is, the Court must look carefully at the record as a whole, paying specific attention to the evidence on which the ALJ based his decision, the potentially conflicting evidence which he rejected, and the particular reasons he offered for doing so. The Court will be unable to determine whether the ALJ's conclusions are rational and based upon substantial evidence unless it is apparent that he has "analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Consequently, the ALJ is obliged to "adequately explain in the record his reason for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986). Stated another way, while the ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004), the Court must nevertheless set aside the decision if the ALJ did not take into account all pertinent medical and non-medical evidence or failed to resolve an evidentiary conflict. *Schonewolf v. Callahan*, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober*, 574 F.2d at 776); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000) (stating that the

ALJ's task is to "review all of the pertinent medical evidence [and] explain[] his conciliations and rejections").

## III. DISCUSSION

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled, and, therefore, eligible for Disability or Supplemental Security Income benefits. 20 C.F.R. § 404.1520; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner, relying on the findings of the ALJ, must first determine whether the claimant is currently engaged in a "substantial gainful activity." If the claimant is currently engaged in substantial gainful activity then she is ineligible for SSI benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from any severe impairment. Under the Social Security Act, an impairment is "severe" when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

If the Commissioner finds that the claimant's condition is severe, he then evaluates whether that conditions qualifies as a "listed impairment." 20 C.F.R. § 404.1520(d). If the claimant's physical or mental conditions meet or equal the criteria for any impairment listed in the Act, then it is presumed that the claimant is disabled and entitled to benefits. If not, the Commissioner continues on to step four to evaluate the claimant's Residual Functional Capacity ("RFC") and determines whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant is capable of returning to past relevant work, then she is ineligible for SSI benefits. If the ALJ finds the claimant is unable to resume past relevant work, the burden then shifts to the ALJ to demonstrate that the claimant is capable of performing work available "in significant numbers in the national economy." *Jones*, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

In this case, Plaintiff offers two related arguments in support of her claim that the ALJ's denial of her benefits claim was not supported by substantial evidence. First, she argues that the ALJ did not accord sufficient weight to certain medical evidence in the record submitted by her primary care physician, a treating psychiatrist, and an examining physician. Second, she asserts that the ALJ's dismissing this otherwise pertinent medical evidence rendered his final decision erroneous: that is, by not ascribing proper to significance to Plaintiff's carpal tunnel and mental health conditions, the ALJ erred by finding that Plaintiff was qualified to perform the full range of sedentary work, which in turn caused him to conclude that Plaintiff was not under a disability from December 31, 2005 through February 24, 2010. Because the Court, for the reasons below, agrees with parts of Plaintiff's first argument and concludes that the ALJ did not take account of certain pertinent evidence and did not adequately resolve conflicting evidence, it will remand the case to the ALJ for further consideration. In light of this determination, it is not necessary for the Court to consider Plaintiff's second argument because the ALJ may be required to revise his findings after determining what weight to accord this previously ignored medical evidence.

**A. Dr. Alpert's Assessment**

Dr. Orna Alpert is a licensed psychiatrist based in Somerset, New Jersey. Plaintiff visited Dr. Alpert every two weeks from August 18, 2007 until December 10, 2007, or as many as nine times. R. at 383. In the course of Plaintiff's application for benefits, the Social Security Administration had Dr. Alpert submit a Medical Source Statement ("MSS"). Dr. Alpert's MSS provided certain opinions about Plaintiff's inability to perform full-time employment on a regular basis because of her mental impairments. The ALJ's decision assessed Dr. Alpert's report and decided that it was owed "no weight" in his analysis. Plaintiff argues that this was error.

An ALJ is required to consider a treating physician's MSS before making an assessment of a claimant's Residual Functional Capacity ("RFC").  *Dyson v. Astrue*, No. 09-3846, 2010 WL 2640143 at *5 (E.D. Pa. June 30, 2010) (citing SSR 96-5p, 1996 WL 374183 (July 2, 1996)). These documents are entitled to "special significance."  SSR 96-5p.  Even if they are not accorded controlling weight in the ALJ's analysis, they are nonetheless entitled to deference and "must be weighed using all of the factors provided" in the relevant regulations.  *Id.*  Among the factors to be considered are length and frequency of the physician's treatment, her specialty, the objective evidence supporting her opinion, and the consistency of that opinion with other relevant evidence in the record.  *Molloy v. Astrue*, No. 08-4801, 2010 WL 421090 at *14 (D.N.J. Feb. 1, 2010) (citing 20 C.F.R. § 416.927).

The ALJ's opinion stated the thrust of Dr. Alpert's findings: that Plaintiff suffered from Major Depression, Generalized Anxiety Disorder/Panic Disorder, that she had a "substantial loss of ability to perform many functions," and that her mental condition resulted in "listing level impairment."  R. at 27.  The ALJ ultimately decided to give Dr. Alpert's MSS no weight.  In arriving at this conclusion, he applied most of the factors listed in 20 C.F.R. § 416. 927. Specifically, he noted that Dr. Alpert had seen Plaintiff only a maximum of nine times over a relatively short span of time, that her assessment was not supported by any treatment records, and that it was "not consistent with the other mental health treatment of record."  R. at 27.

The Court finds that the ALJ did not commit error warranting remand by according no weight to Dr. Alpert's assessment.  Plaintiff argues that Dr. Alpert's opinion was in fact consistent with other mental health assessments in the record, including those of Drs. Gupta and Geshpande, Ms. Gettman, and with records from the Carrier Clinic.  But the ALJ described in some detail the findings of these mental health professionals, all of whom treated Plaintiff on a

9

substantially more extended and more recent basis than did Dr. Alpert. The ALJ's account accurately described how their opinions and diagnoses did in fact conflict with the essence of Dr. Alpert's MSS. R. at 27-29. Thus, the Court will not remand Plaintiff's case for further consideration on this basis.

**B. Dr. Gandhi's MSS**

Plaintiff argues forcefully in her brief that it was "clear error" that the ALJ's decision did not make reference to Dr. Gandhi's 2009 MSS. Pl.'s Br. in Support of Remand 21. The Court notes that Dr. Gandhi, as Plaintiff's primary care physician since December 2005, was uniquely qualified to provide an MSS about Plaintiff's physical impairments.

Indeed, the Court finds no evidence that the ALJ considered Dr. Gandhi's 2009 MSS. It will therefore vacate the ALJ's decision and remand this case for further consideration. It is true that the ALJ's discussion of Dr. Gandhi's findings makes reference to a 2007 Medical Certificate relating to his treatment of Plaintiff. R. at 24. But nowhere does he address the 2009 MSS. While it is true that the many of the ultimate opinions contained in the MSS were "reserved for the Commissioner," and therefore not accorded controlling weight, it is similarly true that the ALJ was obliged to devote explicit attention to these opinions in his written decision. Among other things, the ALJ was required, consistent with the factors listed in 20 C.F.R. § 416.927, to determine what weight to give Dr. Gandhi's findings. *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996). The failure to do so warrants remand.

**C. Dr. Fass's Report**

Finally, Plaintiff argues that the ALJ erred by not assessing the findings of Dr. Barry Fass, a physician who examined Plaintiff on September 3, 2008 and diagnosed her with right carpal tunnel syndrome. R. at 533-37. While the ALJ did summarize Dr. Fass's findings, it is

10

not entirely clear reading his decision what weight he accorded them. Of course, it can be inferred that Dr. Fass's report was of little moment for the ALJ, given that he ultimately decided that Plaintiff's carpal tunnel condition did not significantly affect her ability to do the entire range of sedentary work. Nevertheless, on remand, the ALJ should make clearer his reasons for rejecting Dr. Fass's opinion, given that the doctor's report states that Plaintiff has a "40% permanent partial disability of the right wrist and hand," which he believed was caused by Plaintiff's keyboard typing at work. R. at 537. These findings would at least suggest that perhaps Plaintiff's physical condition could render her unable to complete certain sedentary work, thereby affecting the RFC formulation. While the Court expresses no opinion at this time about the merits of such an argument, the ALJ does need to grapple a bit more with Dr. Fass's findings and explain his reasons for discounting the report in the way he apparently did.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the ALJ's failure to consider Dr. Gandhi's MSS in his decision denying Plaintiff disability benefits was error. Thus, the Court cannot determine whether that decision was supported by substantial evidence. It will therefore vacate the ALJ's decision and remand Plaintiff's case for further consideration consistent with this Opinion. An appropriate order shall issue today.


Dated:  6/24/2013                                      /s/ Robert B. Kugler
                                                                                             ROBERT B. KUGLER
                                                                                             United States District Judge